**Not for Publication in West's Federal Reporter**

# United States Court of Appeals
## For the First Circuit

No. 16-1374

UNITED STATES OF AMERICA,

Appellee,

v.

MALCOLM THOMPSON,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MAINE

[Hon. George Z. Singal, U.S. District Judge]

Before

Torruella, Lynch, and Kayatta,
Circuit Judges.

Victoria L. Nadel on brief for appellant.
Renée M. Bunker, Assistant U.S. Attorney, and Thomas E. Delahanty II, United States Attorney, on brief for appellee.

March 3, 2017

**KAYATTA**, <u>Circuit Judge</u>.  The defendant, Malcolm Thompson, pled guilty to distribution of heroin and cocaine base, in violation of 21 U.S.C. § 841(a)(1).  Although the parties agreed that Thompson's guidelines sentencing range was thirty to thirty-seven months, the district court imposed an upwardly variant sentence of forty-eight months in prison.  Thompson now appeals, arguing that this sentence is both procedurally and substantively unreasonable.  We affirm.

## I.  Background

We briefly state the facts of Thompson's crimes, as reported in "the uncontested portions of the change-of-plea colloquy, presentence report, and sentencing hearing."  <u>United States</u> v. <u>Gall</u>, 829 F.3d 64, 67 n.1 (1st Cir. 2016).  Here, the entire presentence report (PSR) is uncontested.[1]

In May 2015, a cooperating individual (CI) informed the Drug Enforcement Administration (DEA) that Thompson was importing drugs from Arizona to Maine for resale.  Over the course of four

---

[1] Thompson's attorney represented at the sentencing hearing that the probation officer revised the PSR in response to an objection that he had improperly assigned three criminal history points to one of Thompson's prior convictions rather than two. The PSR included in the record on appeal does not reflect this change.  This dispute makes no difference to Thompson's criminal history category, however, as it concerns whether Thompson has four criminal history points or five, see U.S.S.G. ch. 5, pt. A, Sentencing Table (showing that both four and five criminal history points place defendant in criminal history category III), and Thompson does not raise this issue on appeal.

months, Thompson and his associates sold the CI 22.9 grams of heroin and 0.34 grams of cocaine base. In addition, at the time of their arrests, Thompson and one of his associates possessed $5,350 for which no legitimate source could be identified and which the PSR therefore treated as drug proceeds.

According to the calculation in the PSR, Thompson's guidelines sentencing range was thirty to thirty-seven months. This calculation was based on a total offense level of seventeen and a criminal history category of III, resulting from five criminal history points.

The criminal history section of Thompson's PSR recounted an extensive history of drug offenses, including both convictions and pending charges. At age seventeen, Thompson pled guilty to possession of less than twenty-five grams of cocaine in Michigan. A companion charge for delivery or manufacture of less than fifty grams of cocaine was dismissed. He was sentenced to fourteen days in jail and eighteen months of probation.[2] At age twenty-two, he was convicted of use of a controlled substance in Michigan. Companion charges for delivery or manufacture of cocaine and possession of cocaine were dismissed. He was sentenced to six months of probation. At age twenty-four, he was arrested and charged with delivery or manufacture of less than fifty grams of

---

[2] In recounting Thompson's prior sentences, we omit community service requirements and fines.

cocaine in Michigan. After he failed to appear in court, the court issued a warrant, which remains active. At age twenty-five, he pled guilty to solicitation to commit possession of marijuana for sale in Arizona. According to the Arizona state presentence investigation report written in connection with this offense, Thompson admitted to working as a "connect" in the "drug trade" by finding marijuana buyers and putting them in touch with marijuana dealers. He was sentenced to six months in jail and three years of probation. After he was released from jail, he violated his probation by absconding, changing residence without permission, failing to submit to drug testing, and other violations. He was sentenced to one year in jail for the probation violation.[3] At age twenty-eight, he was arrested after fleeing from a house in Arizona where police seized 977 grams of cocaine, around 120 pounds of marijuana, $54,000 in cash, and several loaded firearms. When police arrived at the house, the only person still inside was Thompson's infant daughter, whose mother had dropped her off at that house at Thompson's request. At sentencing, Thompson did not dispute the description of this event that appeared in the PSR. However, he insisted that he did not know about the illicit

---

[3] It appears that Thompson did not serve this entire one-year sentence. The sentence was imposed on May 7, 2014, but Thompson's next arrest occurred on February 3, 2015.

activity occurring in the house, that he was outside the house the whole time, and that he had not been charged after the arrest.[4]

At the sentencing hearing, the parties agreed that Thompson's guidelines sentencing range was thirty to thirty-seven months.  Although the government had indicated at a presentence conference and at the beginning of the sentencing hearing that an upward departure or variance might be warranted due to Thompson's criminal history, the government ended up arguing for a sentence of thirty-seven months.  Thompson's attorney argued for a sentence of thirty months.  Thompson himself also addressed the court.

During the argument by defense counsel and the statement by Thompson, the district court asked several pointed questions about Thompson's criminal history.  After defense counsel argued that Thompson would be able to "get himself turned around," the district court expressed skepticism.  First, the court pointed out that Thompson had "a drug conviction at age 17, . . . a drug involved conviction at age 19,[5] . . . a drug conviction at age 22,

---

[4] The government agreed that there had been no charge as of the day of the sentencing hearing.

[5] The "drug involved conviction at age 19" to which the court was referring was a guilty plea to fleeing a police officer in the fourth degree in Michigan.  After a police officer attempted to pull Thompson over for speeding, he fled and a chase ensued at speeds up to 100 miles per hour.  After Thompson finally stopped and was placed under arrest, $1,030 in cash was found in his shoe. The PSR contained in the record on appeal does not indicate that this money was the proceeds from selling drugs.  However, defense counsel did not argue at sentencing, and the defendant does not

. . . a drug conviction at age 25 where he keeps getting low sentences."  Second, the court noted that after Thompson's age twenty-five conviction in Arizona, he had "admitted to being in the drug trade," and that right after he got out of jail for violating his probation, he began engaging in the conduct that led to the present conviction.  In the court's view, this history was "not an indication of somebody who's just drifting around.  This is a professional drug dealer.  That's what he does and he doesn't care what the law says."  When Thompson himself addressed his record by saying that he was "not that person anymore," the court pressed him to specify when he had changed.  The court also asked about Thompson's presence at the house that was raided in Arizona.  Although the court noted that there was "no evidence that [Thompson had] been charged with anything" or that he personally was "involved with" the drugs in the house, the court asked why Thompson's presence at this raid with his daughter was not a "wake-up call."

When imposing the sentence, the district court adopted the PSR and found that the guidelines sentencing range was thirty to thirty-seven months.  The court stated that it had taken into account all the factors in 18 U.S.C. § 3553(a), including, "[m]ost important, the nature and circumstances of the offense, the history

argue on appeal, that the district court erred in describing this conviction as "drug involved."

and characteristics of this defendant, the seriousness of the offense, the need for just punishment and the need for deterrence." The court concluded, as it had indicated during the hearing, that it believed Thompson to be "basically a professional drug dealer who has been engaging in drug transactions virtually his . . . entire adult life."  The court decided to vary upwards from the guidelines range.  It explained,

> [Thompson has] had multiple wake-up calls all of which he's disregarded.  In many circumstances, he's disregarded the requirements to appear even in court and he misses being a career criminal only by the fact that he failed to appear on several felony drug offenses in Michigan.  If he had appeared and been convicted, he would be, in fact, eligible to be a career criminal today . . . .
>
> I don't see that this defendant, in spite of his protestations, is prepared to turn over a new leaf.  In my view, he sees this arrest and conviction as a cost of doing business and in my mind, it's my belief that he will return to the drug trade as he has every single time he's been convicted, so I think that a variance upward is an appropriate sentence in this case. . . .  In my view, an upward variance to 48 months is the appropriate sentence.

Thompson did not object to this explanation or the sentence at the time it was imposed.

## II.  Discussion

Thompson challenges his sentence as both procedurally and substantively unreasonable.  "The review process is

- 7 -

bifurcated: we first determine whether the sentence imposed is procedurally reasonable and then determine whether it is substantively reasonable." United States v. Arroyo-Maldonado, 791 F.3d 193, 198 (1st Cir. 2015) (quoting United States v. Clogston, 662 F.3d 588, 590 (1st Cir. 2011)).

## A. Procedural Reasonableness

"Typically, we review sentences imposed under the advisory Guidelines for abuse of discretion." Id. at 197. However, when a defendant fails to preserve a claim of procedural error, "the plain error standard supplants the customary standard of review." United States v. Bermúdez–Meléndez, 827 F.3d 160, 164 (1st Cir. 2016) (citation omitted). "Review for plain error entails four showings: (1) that an error occurred (2) which was clear or obvious and which not only (3) affected the defendant's substantial rights, but also (4) seriously impaired the fairness, integrity, or public reputation of judicial proceedings." United States v. Duarte, 246 F.3d 56, 60 (1st Cir. 2001).

Thompson's claim of procedural error rests on three arguments: first, that the district court gave more weight to certain parts of Thompson's record (his criminal history) than to others (his expressed remorse, his early agreement to plead guilty, his family history, his attempts to obtain an education); second, that the district court gave more weight to some of the factors listed in 18 U.S.C. § 3553(a) than to others; and, third, that the

district court did not provide an explanation as to why Thompson's case was so outside the "heartland" of cases that the advisory guidelines range was not sufficient to reflect the § 3553(a) factors.

The first two arguments are easily rejected. Although "a sentencing court may commit procedural error by 'failing to consider the § 3553(a) factors[,]' . . . the weighing of relevant factors is 'largely within the court's informed discretion.'" United States v. Santiago-Rivera, 744 F.3d 229, 232 (1st Cir. 2014) (citations omitted); see also United States v. Rivera-González, 776 F.3d 45, 50 (1st Cir. 2015) ("The defendant's real complaint is not that the court overlooked [the defendant's personal history and characteristics] but that it weighed those factors less heavily than he would have liked. But that type of balancing is, within wide limits, a matter for the sentencing court."). The sentencing court acted within its discretion in choosing to focus on Thompson's criminal history and to discount the significance of his claims that he had changed.

As to the third argument, it is true that

> when a factor relied on to justify a variant sentence "is already included in the calculation of the guidelines sentencing range, a judge who wishes to rely on that same factor to impose a sentence above or below the range must articulate specifically the reasons that this particular defendant's situation is different from the ordinary situation covered by the guidelines calculation."

United States v. Santa-Otero, 843 F.3d 547, 550 (1st Cir. 2016) (quoting United States v. Zapete-García, 447 F.3d 57, 60 (1st Cir. 2006)). A district court may satisfy this requirement by citing to specific facts that distinguish this case from the standard case. See id. (rejecting a similar argument because "the District Court did not rely solely upon [the defendant's] possession of the machine gun in imposing the variant sentence"; rather, it "cited to specific features of the ammunition that [the defendant] possessed along with the machine gun"); United States v. Guzman-Fernandez, 824 F.3d 174, 177-78 (1st Cir. 2016) (rejecting a similar argument because "the district court distinguished [the defendant's] insider participation from the typical 'abuse[] . . of . . . private trust' reflected in the Guidelines" by explaining that the defendant's insider role indicated that his conduct was "bold[]," "planned," and "deliberate" and that the number and details of the robberies made them more serious).

Just as in Santa-Otero, the district court here did not justify its variance merely by pointing to the number of convictions in Thompson's criminal history, which is arguably covered by the guidelines calculation. Rather, the court noted that Thompson's four convictions and sentences for "drug involved" crimes over the course of nine years indicated that he was engaged in the drug trade essentially continuously, with no off time

- 10 -

suggesting that he had reformed or was deterred by the law.[6]  The district court also relied on Thompson's other interactions with the law, including his failure to appear to face pending charges in Michigan and his arrest in Arizona, which suggested that he continued to disregard both his legal obligations and the "wake-up calls" he should have been receiving.  From these facts, the court inferred that Thompson was a "professional drug dealer," discredited his testimony that he planned on changing his life, and concluded that he would merely view his arrest and conviction as a "cost of doing business."  The district court did not plainly err in reaching these factual conclusions or in concluding that they placed Thompson's conviction outside the "heartland" of cases covered by the sentencing guidelines.

---

[6] The district court concluded that Thompson was "a professional drug dealer who ha[d] been engaging in drug transactions virtually his . . . entire adult life."  This conclusion overstated what Thompson's actual convictions showed. Thompson was twenty-nine at the time of his arrest on the present charges.  Prior to the conviction for working as a "connect" in the drug trade at age twenty-five, two of the convictions were for use or possession, not selling, and one conviction was for fleeing a police officer, as described in footnote 4, supra.  But Thompson, who presumably well knew the nature of what he was actually doing, did not object to the court's description of his conduct, arguing instead only that he was "not that person anymore."  He also does not argue on appeal that the district court committed plain error by overstating the duration of his drug dealing activities. Accordingly, we express no opinion as to whether the district court erred in the way it understood Thompson's past behavior.

## B.  Substantive Reasonableness

Thompson asserts that his sentence is substantively unreasonable because the guidelines sentencing range "sufficiently satisfies the aims of sentencing . . . where the offender, his background[,] and the facts of the offense fall within the heartland of cases adequately served by the advisory guidelines range."  We have already explained why the district court's justification of the upward variance was adequate.  Furthermore, an upward variance of eleven months over a thirty-seven-month guidelines maximum is within the range of upward variances that we have deemed reasonable.  See, e.g., Guzman-Fernandez, 824 F.3d at 178-79 (collecting cases); United States v. Díaz-Arroyo, 797 F.3d 125, 127-30 (1st Cir.), cert. denied, 136 S. Ct. 272 (2015) (upholding as reasonable a forty-eight month sentence where the top end of the guidelines sentencing range was twenty-one months).

## III.  Conclusion

For the foregoing reasons, we affirm Thompson's sentence.