# United States Court of Appeals
## For the First Circuit

No. 17-1161

UNITED STATES OF AMERICA,

Appellee,

v.

LUIS DANIEL BENÍTEZ-BELTRÁN,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Aida M. Delgado-Colón, U.S. District Judge]

Before

Torruella, Lipez, and Barron,
Circuit Judges.

Jessica E. Earl, Research and Writing Specialist, Eric Alexander Vos, Federal Public Defender, and Vivianne M. Marrero, Assistant Federal Public Defender, Supervisor, Appeals Section, on brief for appellant.

John A. Mathews II, Assistant United States Attorney, Rosa Emilia Rodríguez-Vélez, United States Attorney, and Thomas F. Klumper, Assistant United States Attorney, Acting Chief, Appellate Division, on brief for appellee.

June 13, 2018

**BARRON**, **Circuit Judge**.  Luis Daniel Benítez-Beltrán ("Benítez") appeals the 120-month prison sentence that he received after pleading guilty to being, in violation of 18 U.S.C. § 922(g)(1), a prohibited person in possession of a firearm. Benítez contends that the District Court erred by classifying his prior conviction for attempted murder under Puerto Rico law as a "crime of violence" that triggers an increase in his base offense level pursuant to § 2K2.1(a)(4) of the United States Sentencing Guidelines.  Benítez also contends that the District Court's upward variance from his advisory sentencing range under the Guidelines was procedurally unsound and that his sentence is substantively unreasonable.  We affirm the sentence.

**I.**

During the execution of a search warrant at Benítez's residence in 2013, Puerto Rico police agents found a loaded revolver hidden behind the drawer of a nightstand.  The following day, the federal government charged Benítez, who is a convicted felon, with one count of being a prohibited person in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1).

In November of 2014, Benítez pleaded guilty to this count pursuant to a plea agreement.[1]  Benítez, who was then serving a

---

[1] The parties agreed to recommend a sentence of 180 months on the understanding that Benítez had three prior convictions for a "violent felony" under the Armed Career Criminal Act, 18 U.S.C.

- 2 -

ninety-year sentence for a 2014 conviction under Puerto Rico law for aggravated robbery and related weapons law violations,[2] was sentenced for this federal conviction in January of 2017.

A probation officer prepared a presentence report ("PSR") based on the November 2016 edition of the Sentencing Guidelines. The PSR determined that § 2K2.1(a)(4) of the Guidelines applied. That guideline establishes the base offense level that applies to a defendant convicted of unlawful possession of a firearm if the defendant committed that offense after having been convicted of a felony that qualifies as a "crime of violence." Applying that guideline, the PSR determined that Benítez's base offense level was twenty, when, in the absence of that guideline's application, his base offense level would have been fourteen. See U.S. Sentencing Guidelines Manual § 2K2.1(a)(6) (2016).

The PSR concluded that Benítez had a prior conviction that qualified as a "crime of violence" due to his 1998 conviction for attempted murder under Puerto Rico law. The PSR stated that

---

§ 924(e)(1). But, after the Supreme Court's intervening decision in Johnson v. United States, 135 S. Ct. 2551, 576 U.S. ___ (2015), invalidated part of the statutory definition of a "violent felony," both parties ultimately recommended a shorter sentence.

[2] The parties' briefs generally refer to the sentence as having a ninety-year duration. We note, however, that Benítez's counsel said at the sentencing hearing that the "total sentence was 115 years, with somewhere between 60 to 65 years as a minimum," and that Benítez's appellate brief at one point also refers to a 115-year sentence.

this prior offense so qualified under what is known as the "force clause" of the Sentencing Guidelines' definition of a "crime of violence."[3]

The PSR also applied a four-level enhancement under § 2K2.1(b)(4)(B) to Benítez's offense level because the firearm involved in Benítez's § 922(g) offense had an obliterated serial number.  Finally, the PSR reduced Benítez's offense level by three levels pursuant to § 3E1.1 due to his acceptance of responsibility.

In sum, the PSR calculated Benítez's total offense level to be twenty-one.  Because the PSR assigned Benítez a criminal history category of V, the PSR determined that Benítez's advisory range for his term of imprisonment under the Guidelines was seventy to eighty-seven months.

After hearing from the parties, the District Court adopted the PSR's Guidelines calculation.  In doing so, the District Court concluded that Benítez had "only one prior conviction" for a "crime of violence," namely his 1998 attempted murder conviction under Puerto Rico law.  The District Court then sentenced Benítez to the statutory maximum prison term of 120 months, see 18 U.S.C. § 922(a)(2), which was a term of imprisonment just under three years above the upper end of the advisory

---

[3] The force clause provides that a "crime of violence" encompasses any felony that "has as an element the use, attempted use, or threatened use of physical force against the person of another."  U.S. Sentencing Guidelines Manual § 4B1.2(a)(1) (2016).

- 4 -

sentencing range under the Guidelines. The District Court ruled that the sentence would run consecutively to any sentence that Benítez was then serving, which would include his ninety-year sentence for his Puerto Rico conviction for aggravated robbery. Benítez objected to the upward variance and then appealed the sentence.

## II.

Benítez first challenges the District Court's conclusion that he had a prior conviction for a "crime of violence" under § 2K2.1(a)(4). Our review of whether Benítez's prior conviction for attempted murder under Puerto Rico law qualifies as a "crime of violence" under the Guidelines is de novo. See United States v. Steed, 879 F.3d 440, 445 (1st Cir. 2018).

## A.

The term "crime of violence" in § 2K2.1(a)(4) has the same meaning as it has in the § 4B1.2 career-offender guideline. U.S. Sentencing Guidelines Manual § 2K2.1, cmt. n.1 (2016). Section 4B1.2(a) defines a "crime of violence" to be any offense punishable by more than one year of imprisonment that either "has as an element the use, attempted use, or threatened use of physical force against the person of another" (the so-called force clause) or is one of several enumerated crimes, including "murder."

Benítez contends that his prior conviction for attempted murder under Puerto Rico law does not qualify as a "crime of

violence."  He does so on the ground that this offense, as defined at the time of his conviction, neither falls within § 4B1.2(a)'s force clause nor matches one of the offenses enumerated in that guideline's definition of a "crime of violence."

We need not address Benítez's argument concerning the force clause.  As we explain, his attempted murder conviction is for an offense that matches one of the guideline definition's enumerated offenses.  See United States v. Ball, 870 F.3d 1, 5 (1st Cir. 2017) ("We may affirm the district court's sentence if any one of the . . . ways that an offense can constitute a crime of violence . . . applies here.").

We use a "categorical approach" to determine whether the offense for which a defendant was previously convicted matches an expressly enumerated offense under § 4B1.2(a).  United States v. Castro-Vazquez, 802 F.3d 28, 35 (1st Cir. 2015) (quoting Descamps v. United States, 133 S. Ct. 2276, 2283, 570 U.S. ___ (2013)).  Under that categorical approach, a prior conviction qualifies as one for a "crime of violence" so long as the elements of the prior offense encompass no more conduct than do the elements of the "generic" version of an offense that the guideline expressly enumerates.  Id. (quoting Descamps, 133 S. Ct. at 2283, 570 U.S. at ___).

To begin our comparative analysis of the elements of Benítez's offense of attempted murder under Puerto Rico law and

the generic version of that offense, we set to one side the fact that his prior conviction was for <u>attempted</u> murder rather than simply "murder." That way, we may first focus on the way that Puerto Rico law defined the offense of "murder" at the time of his conviction, so that we may determine whether that definition makes that offense of "murder" a match with one of the enumerated offenses in § 4B1.2(a).

**B.**

As we have noted, § 4B1.2(a) does list "murder" among the expressly enumerated offenses that qualify as a "crime of violence." So, we must determine whether the generic version of that offense matches the way that Puerto Rico defined that offense when Benítez was convicted of attempting to commit that crime. If the generic version of "murder" is not such a match, then Benítez's conviction for attempted murder obviously does not match an enumerated offense.

The parties agree that, at the time of Benítez's conviction for attempted murder, Puerto Rico defined "murder" as "the killing of a human being with malice aforethought." <u>Pueblo</u> v. <u>Lucret Quiñones</u>, 11 P.R. Offic. Trans. 904, 929 (P.R. 1981) (quoting P.R. Laws Ann. tit. 33, § 4001 (1974)). Benítez's sole argument that the Puerto Rico offense of "murder" at the time of his conviction encompassed more conduct than the generic version of that offense is the following. He asserts that the Puerto Rico

- 7 -

offense of "murder" required "purposeful or knowing conduct," whereas, he says, the generic version of "murder" requires "conduct evincing reckless or depraved indifference to dangers." And, Benítez goes on to contend, in consequence of that difference between the mens rea element of the way Puerto Rico defined "murder" and the mens rea element of the generic version of that offense, the Puerto Rico offense of "murder" criminalized conduct that the generic version of the offense did not.

We, however, do not agree. Benítez bases his assertion on the surprising contention that the mens rea of "purpose" and the mens rea of "knowledge" are less strict than the mens rea of "recklessness" and the mens rea of "depraved indifference." But Benítez offers no authority to support that contention, and there is good reason to think that the opposite would be the case. Cf. Model Penal Code § 2.02(5) ("When recklessness suffices to establish an element, such element also is established if a person acts purposely or knowingly.").

Nor has Benítez persuasively identified any case in which Puerto Rico applied its "murder" statute to encompass more conduct than the generic version of the offense, even accepting his description of the mens rea for "murder" under Puerto Rico law at the time of his conviction and the mens rea for the generic version of the offense. Under the categorical approach, however, there must be a "realistic probability" that Puerto Rico would

- 8 -

have applied its "murder" statute at the relevant time to encompass conduct that the generic definition of "murder" does not criminalize in order for us to conclude that the Puerto Rico offense is broader. Moncrieffe v. Holder, 133 S. Ct. 1678, 1685, 569 U.S. ___ (2013) (quoting Gonzales v. Duenas-Álvarez, 549 U.S. 183, 193 (2007)), and the party that seeks "[t]o defeat the categorical comparison" bears the burden to demonstrate such a "realistic probability." Id. at 1693, 569 U.S. at ___; see also Duenas-Álvarez, 549 U.S. at 193.

Accordingly, we reject Benítez's contention that the Puerto Rico definition of "murder" encompassed less conduct than the generic offense of "murder."[4] And so we next turn to Benítez's alternative contention, which focuses on the way that "attempt" is defined under Puerto Rico law relative to the way that it is defined generically.

### c.

In pressing this argument, Benítez contends that there is no match between the offense for which he was convicted and an

---

[4] Benítez also points out that accomplices can be convicted of "murder" as principals in Puerto Rico. To the extent that he means to contend that for this reason the Puerto Rico offense of "murder" at the time of his conviction was broader than the generic crime, we note that the commentary to § 4B1.2(a) provides that the enumerated crimes of violence include aiding and abetting such offenses. See U.S. Sentencing Guidelines Manual § 4B1.2, cmt. n.1 (2016). And Benítez has not argued that Puerto Rico's definition of "aiding and abetting" encompassed more conduct than the generic definition of "aiding and abetting."

enumerated offense under the Guidelines' definition of a "crime of violence" because, at the time of his conviction, Puerto Rico law defined "attempt" to encompass more conduct than the generic definition of "attempt" does. There is no serious question that "attempting to commit" a "crime of violence" is itself a "crime of violence." U.S. Sentencing Guidelines Manual § 4B1.2, cmt. n.1 (2016); see also United States v. DeLuca, 17 F.3d 6, 10 (1st Cir. 1994) (noting that the Guidelines are "transpicuous" on the point that the term "crime of violence" includes "attempting to commit" such an offense). Thus, so long as Puerto Rico defined "attempt" at the time of Benítez's conviction in a way that matches the generic definition of "attempt," then his conviction will qualify as one for a "crime of violence," given our conclusion about the match between Puerto Rico's definition of "murder" and what Benítez contends is the generic definition of "murder."

The parties agree that, at the time of Benítez's conviction for attempted murder, Puerto Rico law provided that an "attempt" exists "when the person commits acts or makes omissions unequivocally directed to the execution of an offense, which is not consummated through circumstances extraneous to his will." Their dispute therefore concerns whether that Puerto Rico law definition of "attempt" matches the generic definition of "attempt."

Benítez contends that there is no such match.  He relies on the way that "attempt" has been defined as a matter of federal criminal law to define the generic definition of "attempt." Specifically, Benítez contends that, under the federal definition of "attempt" -- and thus, in his view, under the generic definition -- the intent to commit both the underlying inchoate offense and the commission of "an overt act constituting a substantial step toward the commission of the offense" are required.  Benítez then asserts that "attempt" under Puerto Rico law encompassed more conduct than this federal definition because it defined an "attempt" to encompass "any act or omission" -- as opposed to "a substantial step" -- including "mere preparation or slight acts."

In making this assertion, however, Benítez fails to offer any explanation as to why an act or omission that is "unequivocally directed to the execution of an offense" would not be considered a "substantial step" under the generic version of "attempt."  And Benítez's failure is conspicuous given that he concedes that Puerto Rico law made that element of unequivocalness an element of "attempt."  Nor does such an explanation occur to us.  As we mentioned, Benítez defines the generic version of "attempt" according to the law of federal "attempt."  But, "[i]n this circuit, as in a number of others, the court has taken the Model Penal Code as its guide" in defining the federal law of "attempt."  United States v. Doyon, 194 F.3d 207, 210 (1st Cir.

- 11 -

1999).[5]  And the Model Penal Code both defines "attempt" as "an act or omission constituting a substantial step," § 5.01(1)(c), and then goes on to define a "substantial step" as one that is "strongly corroborative of the actor's criminal purpose."  Doyon, 194 F.3d at 211 (quoting Model Penal Code § 5.01(2)).  Thus, it would appear that the definition of "attempt" that Benítez concedes Puerto Rico had adopted was no broader than the generic definition of "attempt," as it would appear that an act or omission that is "unequivocally directed to the execution of an offense" is also one that is "strongly corroborative of the actor's criminal purpose."

Finally, we note, as we did in addressing his argument about "murder," that Benítez bears the burden of proving that there is a realistic probability that Puerto Rico's definition of his prior crime applies to more conduct than does the generic definition of that crime.  But, as was the case with respect to Benítez's assertions about the relative breadth of conduct encompassed by Puerto Rico's definition of "murder," Benítez has not pointed to any Puerto Rico case (or even described a hypothetical case) that shows that Puerto Rico's definition of

---

[5] In United States v. Resendiz-Ponce, 549 U.S. 102 (2007), which Benítez invokes to define federal "attempt," the Supreme Court also relied in part on the Model Penal Code's definition of "attempt."  See id. at 107.

"attempt" at the time of his conviction for attempted murder applied more broadly than does the generic definition of "attempt."

Thus, for these reasons, we conclude that Benítez has not shown that the District Court erred in sentencing him by classifying his 1998 conviction for attempted murder under Puerto Rico law as an enumerated "crime of violence." Accordingly, we reject this first ground for challenging his sentence.

## III.

Wholly apart from the "crime of violence" issue, Benítez also challenges his 120-month prison sentence as procedurally unsound and substantively unreasonable. "We review criminal sentences imposed under the advisory guidelines regime for abuse of discretion. Within this rubric, we assay the district court's factfinding for clear error and afford de novo consideration to its interpretation and application of the sentencing guidelines." United States v. Flores-Machicote, 706 F.3d 16, 20 (1st Cir. 2013) (internal citations omitted).

We begin with Benítez's procedural challenges to his sentence. We then turn to his substantive challenge.

## A.

Benítez contends that the District Court committed procedural errors in sentencing him to the statutory maximum of 120 months of imprisonment by (1) considering a prior sentence that he received for a separate Puerto Rico law conviction, (2)

- 13 -

considering charges that were then pending against him in a separate case under federal law, and (3) failing to explain the basis for the upward variance from his advisory sentencing range under the Guidelines.  None of these contentions has merit.

**1.**

Although Benítez asserts that the District Court impermissibly considered the sentence that he had recently received for aggravated robbery under Puerto Rico law in imposing his sentence for his federal conviction, Benítez does not show that the District Court actually did so.  He instead merely points out that the government "highlighted Mr. Benítez's state court case and its lengthy sentence" and that the District Court "made mention" of that case at the sentencing hearing.  Because Benítez neither explains how the District Court relied on the sentence that he received for aggravated robbery to justify the 120-month prison sentence nor develops an argument as to why any such reliance would have been impermissible, this aspect of his procedural challenge fails.  See United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990) (explaining that undeveloped arguments are deemed waived).

**2.**

Benítez also contends that, in sentencing him, the District Court impermissibly considered a separate federal criminal case that was then pending against him in which he was

- 14 -

charged with carjacking, robbery, and using a firearm in relation to a crime of violence, in violation of 18 U.S.C. §§ 2119, 1951, and 924(c) respectively. Benítez contends that the District Court should not have considered those pending charges in setting his sentence in this case because he should have been "presumed innocent" of those charges.

The District Court expressly stated at the sentencing hearing, however, that it would not consider those then-pending charges in its sentencing decision "in as much [as] he is presumed innocent and he is still facing trial and if convicted that will be for [the other judge] to determine and assess what is the punishment for that offense." Thus, the District Court did not purport to be basing his federal sentence on those pending charges.

To be sure, Benítez does point out that the District Court later in the hearing went on to refer to his arrest for carjacking and related offenses while describing the overall pattern of arrests and convictions in Benítez's criminal history. But, while we have repeatedly expressed our concern about relying on a pattern of prior arrests in the absence of proof by a preponderance of the evidence that the alleged conduct underlying those arrests occurred, see United States v. Rondón-García, 886 F.3d 14, 26 (1st Cir. 2018) (citing United States v. Delgado-Sánchez, 849 F.3d 1, 13 (1st Cir. 2017)), Benítez does not contend that it was impermissible for the District Court to rely on his

- 15 -

pattern of prior arrests in setting his sentence.  See Zannino, 895 F.2d at 17.  Instead, he contends only that the District Court increased his sentence because of his pending charges, notwithstanding that the District Court expressly stated that it was not increasing his sentence due to those charges.

**3.**

Benítez's final procedural challenge is that the District Court erred in sentencing him by failing to justify adequately its decision to vary upward from his advisory sentencing range.  Benítez argues that, even though that range accounted for his criminal history, the District Court nevertheless relied on that very same history in varying upwards from the range, which he says was an error under United States v. Ofray-Campos, 534 F.3d 1, 43 (1st Cir. 2008).

But, Benítez's advisory sentencing range did not necessarily account for the fact that, as the District Court found, "the chances of recidivism are extremely high" here in light of the District Court's finding that Benítez was engaging in crimes involving "the continued use of weapons, the repeated engagement in violent actions against individuals" with little to no off time between convictions and sentences.  In this regard, the District Court explained that the two prior lengthy prison sentences that Benítez had received -- a sentence of nine years of imprisonment for attempted murder and related weapons law violations in 1998

- 16 -

and a sentence of eighteen years of imprisonment for robbery and related weapons law violations in 2003 -- "did not serve the purpose of deterrence."  See United States v. Thompson, 681 F. App'x 8, 12 (1st Cir. 2017) (finding no abuse of discretion in varying upward from the advisory sentencing range where the sentencing court "noted that [the defendant's] four convictions and sentences for 'drug involved' crimes over the course of nine years indicated that he was engaged in the drug trade essentially continuously, with no off time suggesting that he had reformed or was deterred by the law").

In addition, we have explained that "the incidence of particular crimes in the relevant community appropriately informs and contextualizes the relevant need for deterrence."  Flores-Machicote, 706 F.3d at 23.  And, in this case, the District Court found that "the current increase in criminality rate and murder we experience here in Puerto Rico" supported the conclusion that there was a particular need for deterrence in this case.

Benítez does assert that the District Court erred by not explicitly addressing some mitigating factors that Benítez had put forth, such as his young age when he committed his previous crimes, "the birth of his first grandchild, the death of his brother, or his relationship with his mother."  But, "a sentencing court is not required to address frontally every argument advanced by the parties."  United States v. Turbides-Leonardo, 468 F.3d 34, 40

- 17 -

(1st Cir. 2006). Moreover, a sentencing court acts "well within its discretion in giving greater weight to [a defendant's] criminal history than other factors." United States v. Arroyo-Maldonado, 791 F.3d 193, 200 (1st Cir. 2015). Thus, as the District Court did address several mitigating factors that Benítez had identified -- such as his current age, his children, and a serious medical diagnosis -- we cannot say that the District Court abused its discretion in giving the mitigating factors the weight that it did, even though the District Court did not specifically mention the other mitigating factors that Benítez highlights on appeal.

Nor do we find persuasive Benítez's related contention that the District Court erred by impermissibly "turn[ing] some of the mitigation into a reason for a statutory maximum sentence." Benítez points to the District Court's comment that he "has not been able to refrain himself from engaging in illegal conduct" despite the fact that he has "good examples from brothers and family members" and is not "a drug user." But, we do not see how the District Court abused its discretion in reasoning that the likelihood of recidivism is high despite the presence of certain mitigating factors. See United States v. Sagendorf, 445 F.3d 515, 518 n.2 (1st Cir. 2016) (per curiam) ("[T]he requirement that the sentencing judge consider a § 3553(a) factor that may cut in a defendant's favor does not bestow on the defendant an entitlement

to receive any particular 'credit' under that factor.").  Thus, we reject this ground for Benítez's procedural challenge, too.

**B.**

We take up, then, Benítez's argument that his 120-month prison sentence is substantively unreasonable, given that it was the maximum allowed and was being imposed consecutively to a ninety-year sentence.  We are not persuaded.

"[T]he linchpin of a reasonable sentence is a plausible sentencing rationale and a defensible result."  United States v. Martin, 520 F.3d 87, 96 (1st Cir. 2008).  Here, "[i]n concluding that the statutory maximum sentence was justified because this incident . . . was just the latest in a pattern of serious crimes, the district court offered a plausible rationale for its variance."  United States v. Concepción-Montijo, 875 F.3d 58, 60 (1st Cir. 2017) (per curiam).  And, Benítez does not challenge the District Court's decision to impose the federal sentence consecutively.  See United States v. Ocasio-Cancel, 727 F.3d 85, 89-90 (1st Cir. 2013) (describing a district court's "broad" discretion under 18 U.S.C. § 3584(a) to decide "whether to impose a concurrent or consecutive sentence").  We thus fail to see what basis there is for concluding that the District Court erred in setting this federal sentence and then ordering it to run consecutively, given that the variance itself was justified and that Benítez does not

challenge the decision to impose the federal sentence consecutively.

Benítez does reference our recent statement that "[c]ontext matters" in sentencing decisions in contending that imposing an upwardly variant sentence consecutively to an already lengthy one is substantively unreasonable. United States v. Matos-de-Jesús, 856 F.3d 174, 180 (1st Cir. 2017). But, we explained in Matos-de-Jesús that the sentence there was substantively reasonable because, in context, it was "responsive to the nature and circumstances of the offense, the characteristics of the offender, the importance of deterrence, and the need for condign punishment." Id. And while Benítez asserts in conclusory fashion that this consecutive sentence is "an excessive punishment for a handgun tucked away in a bedroom drawer," he fails to develop any argument as to why these features of his offense -- when considered in context, and especially given the evident need for deterrence in light of his criminal history -- indicate that the District Court abused its discretion in determining his sentence. See Zannino, 895 F.2d at 17.

**IV.**

For these reasons, Benítez's sentence is **affirmed**.