# United States Court of Appeals
## For the First Circuit

No. 19-1529

UNITED STATES OF AMERICA,

Appellee,

v.

RAYMOND RODRÍGUEZ-RIVERA,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Carmen Consuelo Cerezo, U.S. District Judge]

Before

Howard, Chief Judge,
Kayatta, Circuit Judge,
and Casper,* District Judge.

Kevin Lerman, Research & Writing Specialist, with whom Eric
Alexander Vos, Federal Public Defender, and Franco L. Pérez-
Redondo, Assistant Federal Public Defender, Supervisor, Appeals
Division, were on brief, for appellant.
Julia M. Meconiates, Assistant United States Attorney, with
whom W. Stephen Muldrow, United States Attorney, and Mariana E.
Bauzá-Almonte, Assistant United States Attorney, Chief, Appellate
Division, were on brief, for appellee.

---

* Of the District of Massachusetts, sitting by designation.

March 4, 2021

KAYATTA, **Circuit Judge**. Once again, we are called upon to consider the circumstances in which a sentencing enhancement for prior involvement with controlled substances is appropriate. Section 2K2.1(a) of the United States Sentencing Guidelines provides for certain sentencing enhancements in situations where, among other conditions, the defendant previously has been convicted of controlled substance offenses. See U.S.S.G. § 2K2.1(a); see also § 4B1.1. Section 4B1.2(b), in turn, defines "controlled substance offense[s]." Application Note 1 to section 4B1.2 further explains that conspiring to commit a controlled substance offense is itself a controlled substance offense.

In United States v. Lewis, we rejected as contrary to binding circuit precedent the contention that Application Note 1 overreached by adding "conspiring" to the list of offenses contained in the Guideline text itself. 963 F.3d 16, 21—23 (1st Cir. 2020). In so doing, we set aside as unpreserved a narrower contention: That the term "conspiring," as used in Application Note 1, includes only a so-called generic form of conspiracy that has as an element an overt act in furtherance of the conspiracy, and therefore does not include a conspiracy charged under 21 U.S.C. § 846, which admittedly has no such overt act element. Id. at 21, 26-27 (finding only no clear error in light of circuit split).

- 3 -

This appeal now requires that we address that narrower contention head-on without the leeway afforded by plain error review. Our answer matters because the classification of an offense as a controlled substance offense often results in longer recommended sentences by raising base offense levels, see, e.g., U.S.S.G. § 2K2.1(a), and section 846 most commonly serves as the vehicle for charging conspiracy offenses in federal drug cases. To date, the six circuits that have addressed this issue have split four to two[1] in deciding whether the absence of an overt act requirement precludes section 846 conspiracies from qualifying as

---

[1] Compare United States v. Tabb, 949 F.3d 81, 87—89 (2d Cir. 2020) (holding that a conviction for conspiracy to commit a controlled substance offense under section 846 qualifies as a conviction for a controlled substance offense under U.S.S.G. § 4B1.2(b) and Application Note 1), United States v. Rivera-Constantino, 798 F.3d 900, 903 (9th Cir. 2015) (same in the context of U.S.S.G. § 2L1.2(b)), United States v. Sanbria-Bueno, 549 F. App'x 434, 438–39 (6th Cir. 2013) (unpublished) (collecting cases and reaching the same conclusion under U.S.S.G. § 2L1.2(b)), and United States v. Rodriguez-Escareno, 700 F.3d 751, 753—54 (5th Cir. 2012) (same), with United States v. McCollum, 885 F.3d 300, 309 (4th Cir. 2018) (holding that conviction under another federal conspiracy statute that does not require an overt act, 18 U.S.C. § 1959(a)(5), does not qualify as a conspiracy for the purposes of Application Note 1 to section 4B1.2), United States v. Whitley, 737 F. App'x 147, 149 (4th Cir. 2018) (unpublished) (holding that section 846 is a categorical mismatch with generic conspiracy and therefore the enhancement does not apply for a section 846 conviction), and United States v. Martinez-Cruz, 836 F.3d 1305, 1314 (10th Cir. 2016) (holding in the context of U.S.S.G. § 2L1.2(b) that section 846 is a categorical mismatch with generic conspiracy and that therefore the enhancement did not apply).

conspiracies under either section 2K2.1(a) or section 2L1.2(b) of the Guidelines.[2]

For the following reasons, we join the growing majority of circuits and hold that a conviction under 21 U.S.C. § 846 for conspiring to commit a controlled substance offense qualifies as a conviction for a controlled substance offense under section 4B1.2(b) of the Guidelines, even though section 846 does not require proof of an overt act.

**I.**

On June 14, 2018, officers of the Puerto Rico Police Department served a state-issued search warrant at an apartment in San Juan, Puerto Rico. Rodríguez-Rivera was inside the apartment at the time, along with a woman and children. While conducting a search of the apartment, police discovered a Glock pistol that had been modified to shoot automatically, two bulletproof vests, and several dozen rounds of ammunition. Rodríguez-Rivera took

---

[2] Section 2L1.2(b)(2)(e) provides for a sentencing enhancement for individuals who unlawfully entered or returned to the United States if they have been convicted of three or more "drug trafficking offenses," i.e., "offense[s] under federal, state, or local law that prohibit[] the manufacture, import, export, distribution, or dispensing of . . . or the possession of a controlled substance . . . with intent to manufacture, import, export, distribute, or dispense." U.S.S.G. § 2L1.2 cmt. n.2. Prior to 2016, Application Note 5 to that guideline stated that drug trafficking offenses "include the offenses of aiding and abetting, conspiring, and attempting[] to commit such offenses." See U.S.S.G. App. C, Amend. 802 (effective Nov. 1, 2016). This Application Note was deleted in the 2016 amendments to section 2L1.2. See id.

responsibility for the contraband and was arrested. Later, during an interview with federal agents, he provided a written statement acknowledging possession of the firearm.

A federal grand jury returned an indictment charging Rodríguez-Rivera with unlawful possession of a firearm as a convicted felon, in violation of 18 U.S.C. § 922(g)(1), and unlawful possession of a machine gun, in violation of 18 U.S.C. § 922(o). He pled guilty to both charges.

Rodríguez-Rivera had been previously convicted of conspiracy to distribute cocaine, cocaine base, and heroin, in violation of 21 U.S.C. § 846, and was sentenced to 24 months' imprisonment for that offense. The Probation Office's presentence investigation report (PSR) for the instant offense consequently recommended that the district court apply a controlled substance enhancement, pursuant to section 2K2.1(a), and assigned Rodríguez-Rivera a base offense level of 22. Rodríguez-Rivera objected, citing an unpublished Fourth Circuit ruling, United States v. Whitley, 737 F. App'x 147 (4th Cir. 2018), in support of his argument that a conviction under section 846 is not a controlled substance offense under the Guidelines and that therefore, his base offense level should be 20, rather than 22.

The district court agreed with Probation and applied the enhancement, which added six and eight months of imprisonment, respectively, to the bottom and top of the Guidelines sentencing

range. The district court sentenced Rodríguez-Rivera to thirty-eight months' imprisonment and a three-year term of supervised release. This appeal followed.

**II.**

We review de novo the district court's interpretation and application of the Sentencing Guidelines. United States v. Lewis, 963 F.3d 16, 20 (1st Cir. 2020). In this case, the district court applied section 2K2.1(a)(3), which provides that the base offense level will be 22 if:

> (A) the offense involved a (i) semiautomatic firearm that is capable of accepting a large capacity magazine; or (ii) firearm that is described in 26 U.S.C. § 5845(a); and (B) the defendant committed any part of the instant offense subsequent to sustaining one felony conviction of either a crime of violence or a controlled substance offense[.]

U.S.S.G. § 2K2.1(a)(3). The existence of a qualifying firearm is not in contention in this case, nor is there any claim that Rodríguez-Rivera was not convicted in 2005 of conspiring to possess with intent to distribute cocaine, cocaine base, and heroin, in violation of 21 U.S.C. § 846. Instead, the parties dispute whether a section 846 conspiracy qualifies as the type of conspiracy that constitutes a controlled substance offense.

The term "controlled substance offense," as used in section 2K2.1(a), is defined in section 4B1.2(b) as follows:

> an offense under federal or state law, punishable by imprisonment for a term

exceeding one year, that prohibits the manufacture, import, export, distribution, or dispensing of a controlled substance (or a counterfeit substance) or the possession of a controlled substance (or a counterfeit substance) with intent to manufacture, import, export, distribute, or dispense.

Application Note 1 to that provision adds that a "controlled substance offense" "include[s] the offenses of aiding and abetting, conspiring, and attempting to commit such offenses." U.S.S.G. § 4B1.2 cmt. n.1. And our controlling circuit precedent deems that interpretation to be authoritative. See United States v. Lewis, 963 F.3d at 21-22 (relying on United States v. Piper, 35 F.3d 611, 617 (1st Cir. 1994) and United States v. Fiore, 983 F.2d 1, 3-4 (1st Cir. 1992), abrogated on other grounds by United States v. Giggey, 531 F.3d 27, 28 (1st Cir. 2008) (en banc)).

In view of this precedent, Rodríguez-Rivera trains his argument on the definition of the term "conspiring" as used in Application Note 1. He defines the term in three steps: First, in deciding what "conspiring" means in this context, he says we should ascertain the "generic" form of conspiracy offenses. He then says that the generic form includes as an element the commission of an overt act in furtherance of the conspiracy. Finally, because a conviction under section 846 admittedly does not have as an element the commission of an overt act, he concludes that his prior conviction does not qualify as a conspiracy offense for purposes of Guidelines section 2K2.1. Two circuits have more

- 8 -

or less accepted this argument. See <u>United States</u> v. <u>Martinez-Cruz</u>, 836 F.3d 1305, 1309, 1314 (10th Cir. 2016); <u>United States</u> v. <u>McCollum</u>, 885 F.3d 300, 307-09 (4th Cir. 2018).

Our skepticism focuses on the first step in Rodríguez-Rivera's argument: We see little sense in identifying and adopting a generic version of the conspiracy offense as the benchmark against which to compare a violation of section 846. Rather, it seems apparent that the Guidelines (especially as interpreted in Application Note 1) tell us what type of conspiracy offense to look for: One "that prohibits the manufacture, import, export, distribution, or dispensing of a controlled substance . . . or the possession of [the same]." U.S.S.G. § 4B1.2(b). Section 846, as applied to a controlled substance offense, would seem to qualify: By barring two or more people from agreeing to manufacture controlled substances, for example, it would seem to prohibit at least one common means of drug manufacturing. 21 U.S.C. §§ 846, 841(a).

More generally, and significantly, section 846 is part of the Controlled Substances Act, and section 846 is the only part of that Act that specifically makes any form of conspiring a crime. Given our circuit precedent -- that a controlled substance offense includes at least some types of conspiracy -- it would be odd indeed if the definition of a controlled substance offense excluded the only form of conspiracy prohibited by the Controlled Substances

- 9 -

Act itself. "Ultimately, context determines meaning, and we 'do not force term-of-art definitions into contexts where they plainly do not fit and produce nonsense.'" Johnson v. United States, 559 U.S. 133, 139-40 (2010) (citation omitted) (quoting Gonzales v. Oregon, 546 U.S. 243, 282 (2006) (Scalia, J., dissenting)).

Resisting this common-sense notion that a conspiracy under the Controlled Substances Act is a controlled substance offense, Rodríguez-Rivera argues that United States v. Taylor, 495 U.S. 575 (1990), and its progeny require us to apply the so-called "generic" definition of conspiracy. In Taylor, the Court did indeed adopt the generic definition of "burglary" as used in 18 U.S.C. § 924(e). 495 U.S. at 598—99. But the Court did so only after first determining that Congress's intended understanding of the term was "not readily apparent," id. at 580, and that the legislative history suggested "Congress, at least at that time, had in mind a modern 'generic' view of burglary," id. at 589. Adoption of that view broadened, rather than narrowed, the scope of encompassed crimes, in keeping with the intended overall purpose of the Armed Career Criminal Act (ACCA), 18 U.S.C. § 924(e). See Taylor, 495 U.S. at 581—84, 598. Here, section 846's inclusion within the Controlled Substances Act and the lack of any reference to any generic alternative in the Act counsel against the need to search elsewhere to know what a controlled substances conspiracy is.

- 10 -

Neither party has pointed to any legislative history that would advise to the contrary.

We recognize that since Taylor, the Supreme Court has, in the context of immigration violations, referred to adopting the generic view of "illicit trafficking in a controlled substance," see Moncrieffe v. Holder, 569 U.S. 184, 192 (2013) (quoting Nijhawan v. Holder, 557 U.S. 29, 37 (2009)) (employing the categorical approach to determine whether marijuana possession always qualifies as "illicit trafficking in a controlled substance" under the Immigration and Nationality Act), and, in dicta, referred to adopting the generic view of various offenses listed as crimes of violence, see Mathis v. United States, 136 S. Ct. 2243, 2248 (2016) (burglary, arson, extortion). In Descamps v. United States, too, the Supreme Court looked immediately to the generic versions of ACCA's enumerated offenses as the benchmark against which a predicate offense is to be compared. 570 U.S. 254, 257 (2013) ("To determine whether a past conviction is for [an ACCA crime], courts use what has become known as the 'categorical approach': They compare the elements of the statute forming the basis of the defendant's conviction with the elements of the 'generic' crime -- i.e., the offense as commonly understood."). And in United States v. Capelton, we (and the parties) assumed without discussion that we should do the same in defining "aiding and abetting" under Application Note 1. Capelton,

966 F.3d 1, 6—7 (1st Cir. 2020). But neither the Supreme Court nor this court has instructed that all terms in statutes or the Guidelines must be understood to refer to generic versions of an offense.

To the contrary, before applying the categorical approach in Johnson, the Court first determined what the term "physical force" meant as used in ACCA, without needing to search for any generic meaning. With that definition of force in hand, the Court then applied the categorical approach to determine whether a state offense matched that benchmark. 559 U.S. at 140—42.

The Supreme Court's recent decision in Shular v. United States confirms that we are on the right track in rejecting a generic version of conspiracy as the benchmark against which to compare a violation of section 846. 140 S. Ct. 779, 782 (2020). At issue in Shular was whether a prior conviction under Florida law for possessing with intent to distribute cocaine was a "serious drug offense" under ACCA, 18 U.S.C. § 924(e)(2)(A)(ii). ACCA defines a serious drug offense as including "an offense under State law, involving manufacturing, distributing, or possessing with intent to manufacture or distribute, a controlled substance." Shular, 140 S. Ct. at 784 (quoting 18 U.S.C. § 924(e)(2)(A)(ii)). The defendant argued that the gerunds "manufacturing, distributing, or possessing" need be defined by reference to analog generic offenses. The Court disagreed on the ground that the

relevant ACCA provisions described conduct rather than offenses with elements. The Court reached this conclusion for two reasons.

First, the terms themselves were "unlikely names for generic offenses," Shular, 140 S. Ct. at 785, in contrast with, for example, "burglary, arson or extortion." Rather, the ACCA terms are more readily viewed as descriptions of conduct. Id. Second, while section 924(e)(2)(B)(ii) uses the formulation X is Y, (e.g., a crime that "is burglary, arson, or extortion"), section 924(e)(2)(A)(ii) uses the formulation X involves Y (i.e., "an offense . . . involving manufacturing, distributing or possessing . . . a controlled substance"). This, too, reinforces the understanding that "the descriptive terms immediately following the word 'involving' identify conduct." 140 S. Ct. at 785.

For those reasons, the Court eschewed ascertaining the "generic" meaning of those terms before determining whether the state law offenses were within ACCA's scope. Id. at 787. Instead, the Court simply affirmed the Eleventh Circuit's ruling that in classifying a state offense as a controlled substance offense it "need not search for the elements of 'generic' definitions"; rather, it need only ask whether the state offense involves the requisite conduct. Id. at 784 (quoting United States v. Smith, 775 F.3d 1262, 1267 (11th Cir. 2014)).

The guideline at issue in this case -- U.S.S.G. § 4B1.2(b), by way of § 2K2.1 -- uses neither the X is Y formulation nor the X involves Y formulation. Nonetheless, it tracks the latter formulation in relevant respects, forgoing any attempt to list generally recognizable offenses in favor of describing conduct that the offense need "prohibit" ("manufacture, import, export, distribution, or dispensing"). This conduct is, in relevant respects, indistinguishable from the conduct at issue in Shular. U.S.S.G. § 4B1.2(b). So our charge under the Guidelines is not to define or identify any generic offense as the measure of a categorical test, but instead to ask whether the predicate offense "prohibits" the specified conduct.

Application Note 1 admittedly veers closer to the "X is Y" formulation (a "'controlled substance offense' include[s] the offense[] of . . . conspiring"). U.S.S.G. § 4B1.2 cmt. n.1. However, it uses the gerund "conspiring," which naturally refers to conduct, rather than the offense of "conspiracy." And "include[s]" is not so far from "involv[es]." The Guideline itself then makes clear that the key test is whether the aim of the "conspiring" is certain prohibited conduct. See Piper, 35 F.3d at 19. Section 846 passes this test as well as any generic conspiracy offense does. U.S.S.G. § 4B1.2(b). All in all, we see nothing sufficient to overpower the strong sense that conspiring under section 846 of the Controlled Substances Act was one of many

- 14 -

offenses the Sentencing Commission had in mind when stating, in Application Note 1, that the offense of conspiring to commit a controlled substance offense is a controlled substance offense.[3]

Having thus concluded that determining whether an offense is a controlled substance offense under section 2K2.1 requires only that we determine whether the offense prohibits the conduct specified in section 4B1.2, our work is done without any need to identify the elements of any "generic" conspiracy offense.

## III.

As we said at the outset, we confirmed in Lewis that circuit precedent regards an offense of conspiracy, within the meaning of Application Note 1 to section 4B1.2 of the Guidelines, to be a controlled substance offense under that section. On plain error review, we left unresolved only whether conspiring under

---

[3] Rodríguez-Rivera contends that we should be guided by United States v. Benítez-Beltrán, in which this court assessed whether Benítez-Beltran's prior conviction for attempted murder under Puerto Rico law qualifies as a "crime of violence" under the Guidelines. 892 F.3d 462, 465 (1st Cir. 2018). This court applied the categorical approach, as laid out in Taylor, to both the inchoate offense -- attempt -- and the underlying crime of conviction -- murder. Id. at 466. However, Rodríguez-Rivera's comparison to Benítez-Beltran fails to surmount our Shular analysis. Section 4B1.2(a) defines a "crime of violence" as any offense punishable by more than one year of imprisonment that either "has as an element the use, attempted use, or threatened use of physical force against the person of another" or is one of several enumerated crimes, including "murder." Id. (citing U.S.S.G. § 4B1.2(a) (2016)). As discussed above, section 4B1.2(a) describes offenses with elements, lending itself to the Taylor approach, while section 4B1.2(b) describes conduct, as analyzed above.

- 15 -

section 846 is "conspiring" within the meaning of Application Note 1.  For the foregoing reasons, we conclude that it is.  We therefore <u>affirm</u> Rodríguez-Rivera's sentence.