# United States Court of Appeals
## For the First Circuit

No. 23-1317

UNITED STATES OF AMERICA,

Appellee,

v.

DEREK GERRISH,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MAINE

[Hon. Jon D. Levy, U.S. District Judge]

Before

Gelpí, Selya, and Montecalvo,
Circuit Judges.

Robert C. Andrews on brief for appellant.
Darcie N. McElwee, United States Attorney, and Shira Furman,
Assistant United States Attorney, on brief for appellee.

March 15, 2024

**SELYA**, <u>Circuit Judge</u>. Defendant-appellant Derek Gerrish moved to suppress evidence that local police officers uncovered from a search of his vehicle after observing suspicious conduct in the lot in which it was parked. Concluding that the officers possessed reasonable suspicion and the defendant's bail conditions authorized the search, the district court denied his motion. The defendant subsequently entered a conditional guilty plea, <u>see</u> Fed. R. Crim. P. 11(a)(2), to a federal drug offense and, on appeal, continues to challenge the constitutionality of the search. After careful consideration, we affirm.

## I

We briefly rehearse the relevant facts and travel of the case. We start with the fundamental facts.

## A

In June of 2021, the police department in Scarborough, Maine received a complaint from a staff member at a local hotel, which alerted them to the possible involvement of hotel guests in drug trafficking and prostitution. In response to this tip, two plainclothes police officers staked out the hotel from an unmarked car in the adjacent parking lot. During their stakeout, the officers observed two cars enter the hotel's parking lot and proceed to park a distance from the building's main entrance even though the lot was only partly populated.

After tracking several events not relevant here, the officers noticed the driver of one of the cars (a Toyota Avalon) flick a syringe as though she was preparing to inject it. They subsequently approached the two cars, identified themselves as police officers, and searched the Toyota, which revealed additional drug paraphernalia. Upon further questioning, the defendant — who had occupied the other car (a Chrysler 300) — identified himself and acknowledged that he was on pretrial release pending resolution of several Maine state criminal charges. He added that the terms of his release authorized searches without reasonable suspicion — a fact that the officer confirmed with dispatch before proceeding. As matters turned out, the defendant was subject to at least six separate sets of bail conditions pursuant to Maine law. Five of these strictures provided for searches of his person, vehicle, or residence at any time and without suspicion to determine if he had violated other bail conditions.

The officer who questioned the defendant provided two justifications for his ensuing search of the Chrysler: the bail conditions authorized the search, and the defendant had been seen speaking to someone in the Toyota whose driver they had observed preparing to inject a syringe. Searching the Chrysler produced a substance that later was confirmed to be fentanyl, along with an assortment of other contraband. The defendant subsequently

pleaded guilty to possession with intent to distribute fentanyl in violation of 21 U.S.C. § 841(a)(1). The district court sentenced him to serve a ninety-month term of immurement.

In this venue, the defendant challenges the district court's denial of his motion to suppress the evidence from the search of the Chrysler (which he filed prior to tendering his guilty plea). See United States v. Gerrish, No. 21-132, 2022 WL 1156057, at *1 (D. Me. Apr. 19, 2022).

**B**

The district court denied the defendant's motion to suppress the evidence obtained from the search of the Chrysler on two independent grounds. See id. at *4-5. First, it concluded that the officers had reasonable suspicion of criminal activity to detain and search the defendant under the doctrine of Terry v. Ohio, 392 U.S. 1 (1968). Second, it determined that the defendant's bail conditions requiring that he submit to searches without suspicion also justified the officers' conduct. See Gerrish, 2022 WL 1156057, at *5. It rejected the defendant's suggestion that the search was unconstitutional under Maryland v. King, 569 U.S. 435 (2013), because that case stands for the unrelated proposition that a person arrested for offenses of a violent nature or burglary could be forced to submit to a buccal swab for DNA collection. See Gerrish, 2022 WL 1156057, at *5. The more relevant question, the court believed, was whether a bail

- 4 -

condition requiring searches without suspicion was constitutionally permissible. See id. It proceeded to answer this question in the affirmative based on our opinion in United States v. Gates, 709 F.3d 58 (1st Cir. 2013). There, we could discern "no reason why we should not give the plain language of such a bail condition [authorizing searches without suspicion] force and effect."[1] Id. at 64.

In defense of his position, the defendant raised an apparent conflict between Gates and the decision in United States v. Scott, 450 F.3d 863 (9th Cir. 2006). There, the Ninth Circuit held that probable cause was required to drug test or search the home of a defendant on pretrial release even though he had consented to searches without suspicion as a condition of his release. See id. at 865-66, 874-75. The court below countered that the bail conditions in Scott were unsupported by individualized judicial findings. See Gerrish, 2022 WL 1156057, at *5 (citing Scott, 450 F.3d at 865, 872 & n.12). In contrast, the Maine Bail Code mandates that judicial officers impose the least restrictive bail conditions that, inter alia, reasonably

---

[1] District courts in this circuit have consistently relied on Gates to give effect to this type of bail condition, placing the burden on the defendant to show that the condition was unreasonable or that the defendant did not understand it. See, e.g., United States v. Kissh, 433 F. Supp. 3d 1, 4 (D. Me. 2020); United States v. Drane, No. 13-31, 2014 WL 2940857, at *9 (D.N.H. June 30, 2014). Neither set of circumstances was relevant here.

ensure a defendant will appear wherever and whenever required. See Me. Rev. Stat. Ann. tit. 15, § 1026(3)(A), (4)(C). And Maine law requires that the bail decision be predicated on "an interview with the defendant, information provided by the defendant's attorney and information provided by the attorney for the State or an informed law enforcement officer if the attorney for the State is not available and other reliable information." Id. § 1026(4). Thus, the court held that the Ninth Circuit's reasoning in Scott was inapplicable to the defendant's circumstances here. See Gerrish, 2022 WL 1156057, at *5.

## II

The defendant contends that both of the district court's rationales for denying his motion to suppress were erroneous. When presented with a challenge to the denial of a motion to suppress, "we examine the district court's 'factual findings for clear error and its legal conclusions, including its ultimate constitutional determinations, de novo.'" United States v. Sheehan, 70 F.4th 36, 43 (1st Cir. 2023) (quoting United States v. Moss, 936 F.3d 52, 58 (1st Cir. 2019)). Because we conclude the bail conditions that plainly permitted the challenged search were constitutional, we need not reach the investigatory detention rationale.

### A

In a contrary vein, the defendant asserts, "[t]o the extent that bail searches are a matter of discretion by law

enforcement in both scope and place[,] they do not fit within the" Supreme Court's reasoning in King. The King Court held that a buccal swab of a person under arrest was a reasonable search because: "[t]he arrestee [was] already in valid police custody for a serious offense supported by probable cause"; "[t]he DNA collection [was] not subject to the judgment of officers whose perspective might be colored by their primary involvement in the often competitive enterprise of ferreting out crime"; and "such intrusions are defined narrowly and specifically in the regulations that authorize them." 569 U.S. at 448 (internal quotations omitted).

The defendant seems to suggest that the search of him did not feature these characteristics that led the Court to endorse the search of the defendant in King. But the defendant's reliance on King overlooks the fact that he knowingly agreed to — and does not challenge the reasonableness of — bail conditions that authorized searches of him without suspicion. As the district court correctly noted, the analysis in King is inapposite because the issue here is not necessarily the search itself but, rather, the bail conditions that authorized the search. See Gerrish, 2022 WL 1156057, at *5.

**B**

As to the soundness of the bail conditions, the defendant asserts that — in contrast to his pretrial release status — the

- 7 -

cases approving the use of bail conditions that authorize searches without suspicion involve defendants who were serving sentences at the time of the search. That is, the guilt of a person on parole already has been determined, and any parole conditions, therefore, are incident to a lawfully imposed sentence. Whereas — as he argues here — such constraining bail conditions cannot be imposed, without further judicial process, on one who has yet to stand trial or plead guilty. He adds, moreover, that our treatment of the issue in Gates is dictum because we recognized that "the district court took a belt-and-suspenders approach," which "supportably found that the search was independently justified by the extant bail conditions." 709 F.3d at 64.

Dictum or not, we see no reason to retreat from the language in Gates. Indeed, reasoning from Samson v. California, 547 U.S. 843 (2006) — to which Gates cites — illustrates the point. There, the Court held that a person on parole could be searched without suspicion because he had submitted to these searches as a condition of his parole. See id. at 852. In so holding, the Court reasoned "that acceptance of a clear and unambiguous search condition 'significantly diminishe[s] [one's] reasonable expectation of privacy.'" Id. (quoting United States v. Knights, 534 U.S. 112, 120 (2001)). Because bail provides a similar mechanism for a defendant to avoid custody while the criminal legal process unfolds, one who is on pretrial release likewise faces a

- 8 -

diminished expectation of privacy.  And a state maintains legitimate interests — such as ensuring the integrity of the criminal legal process — in supervising persons on pretrial release.

## C

Finally, the defendant highlights the apparent conflict between our decision in Gates and the Ninth Circuit's decision in Scott.  But as the defendant's own brief admits, we are bound by the law of the circuit doctrine, which "commands our adherence to our own prior panel decisions."  United States v. Gonzalez, 949 F.3d 30, 39 (1st Cir. 2020).  In other words, it is not our role to overturn binding circuit precedent for the purpose of resolving what the defendant perceives as a circuit split.

Even so, as the district court identified, the defendant's circumstances meaningfully differ from those of the defendant in Scott.  See Gerrish, 2022 WL 1156057, at *5.  Because Maine law requires that a judicial officer impose the "least restrictive" bail conditions and tailor these conditions to the defendant's individual circumstances, Me. Rev. Stat. Ann. tit 15, § 1026(3)(A), (4)(C), the Ninth Circuit's concerns about a defendant's mandatory waiver of rights as a condition for pretrial release vanish.

**III**

We need go no further.  For the reasons elucidated above, the judgment of the district court is


**<u>Affirmed</u>**.