# United States Court of Appeals
## For the First Circuit

No. 24-2107

UNITED STATES OF AMERICA,

Appellee,

v.

MICHAEL MAO, a/k/a Whitebodian, a/k/a Spook, a/k/a Leno,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. F. Dennis Saylor, IV, U.S. District Judge]

Before

Gelpí, Lynch, and Howard,
Circuit Judges.

Rory A. McNamara and Drake Law LLC on brief for appellant.

Mark T. Quinlivan, Assistant United States Attorney, and Leah B. Foley, United States Attorney, on brief for appellee.

April 29, 2026

**LYNCH, Circuit Judge**. Michael Mao appeals from a 121-month sentence imposed after he pled guilty to conspiracy to commit drug trafficking and money laundering. On August 14, 2024, Mao pled guilty to conspiring with others to distribute controlled substances from at least December 2019 through May 2021 in the Virginia correctional facility where he was incarcerated. His appeal challenges the district court's determination that he was a "career offender" under the United States Sentencing Guidelines (the "Guidelines" or "U.S.S.G."), on two grounds. First, he argues that his prior Virginia conviction under Va. Code Ann. § 18.2-53.1 for using or displaying a firearm in the commission of a robbery was not a "crime of violence" as referenced in U.S.S.G. § 4B1.1. Second, he contends that his conviction for conspiring to distribute drugs was not a "controlled substance offense" under the Guidelines and that this court should overrule its precedent to the contrary. We hold Mao's first challenge is without merit and his second is foreclosed by the law-of-the-circuit doctrine, and even so, we see no reason to depart from our precedent. We affirm his sentence.

## I.

Because Mao pled guilty, "we draw the facts from 'the change-of-plea colloquy, the presentence investigation report ("PSR"), and the sentencing record.'" United States v. Tang, 160

- 2 -

F.4th 237, 240-41 (1st Cir. 2025) (quoting United States v. De La Cruz, 91 F.4th 550, 551 (1st Cir. 2024)).

From at least December 2019 through May 2021, while incarcerated at the Buckingham Correctional Center in Dillwyn, Virginia, Mao conspired with others to distribute MDMA and buprenorphine (also known as Suboxone). Mao worked with two Massachusetts-based drug traffickers, Sathtra Em and Sarath Yut, and with Kenneth Owen, a correctional officer at Buckingham, to distribute the drugs within the facility and collect the proceeds.

A federal grand jury in the District of Massachusetts returned an indictment on January 11, 2023, charging Mao with one count of conspiring to distribute and to possess with intent to distribute MDMA and buprenorphine, in violation of 21 U.S.C. § 846, and one count of conspiring to commit money laundering, in violation of 18 U.S.C. § 1956(h). Mao pled guilty to both counts on August 14, 2024, and a sentencing hearing was held on November 18, 2024.

On November 8, 2024, the Probation Office filed Mao's PSR, which calculated a base offense level of 20 under U.S.S.G. § 2D1.1 and arrived at an adjusted offense level of 26. The PSR further determined that Mao qualified as a career offender under § 4B1.1 and, after a reduction for acceptance of responsibility, calculated a total offense level of 29 and an advisory Guidelines range of 151 to 188 months' imprisonment.

The PSR correctly noted that to qualify as a career offender under the Guidelines: (1) the defendant must be "at least eighteen years old at the time the defendant committed the instant offense of conviction"; (2) the defendant's instant offense must be "a felony that is either a crime of violence or a controlled substance offense"; and (3) the defendant must have "at least two prior felony convictions of either a crime of violence or a controlled substance offense." U.S.S.G. § 4B1.1(a). A "crime of violence" is defined under the Guidelines as:

> [A]ny offense under federal or state law, punishable by imprisonment for a term exceeding one year, that -- (1) has as an element the use, attempted use, or threatened use of physical force against the person of another; or (2) is murder, voluntary manslaughter, kidnapping, aggravated assault, a forcible sex offense, robbery, arson, extortion, or the use or unlawful possession of a firearm described in 26 U.S.C. § 5845(a) or explosive material as defined in 18 U.S.C. § 841(c).

U.S.S.G. § 4B1.2(a). "Subsection (1) of this definition is known as the 'force clause,'" and "the segment of subsection (2) listing specific crimes is known as the 'enumerated offenses clause.'" United States v. Frates, 896 F.3d 93, 96 (1st Cir. 2018).

The PSR concluded that Mao's two predicate Virginia felony convictions -- a 2009 conviction for use of a firearm in the commission of a robbery and a 2009 conviction for attempted murder -- qualified as crimes of violence under § 4B1.1(a). It

further found that Mao's instant conviction for conspiracy to distribute controlled substances qualified as a "controlled substance offense." Accordingly, the PSR found that the career offender enhancement should apply.

As relevant to this appeal, Mao objected to his classification as a career offender on two grounds. First, he argued that his prior conviction for use of a firearm in the commission of a robbery under Va. Code Ann. § 18.2-53.1 was not a "crime of violence" because it did not have as an element the use of force "against the person of another." Mao claimed that, under Virginia's common-law definition of robbery, a defendant could (i) use force against the robbery victim's property, as opposed to the victim's person, or (ii) threaten harm to himself rather than to the victim. Second, he argued that his instant conviction for conspiracy to commit drug trafficking was not a "controlled substance offense" because "[n]otwithstanding First Circuit precedent to the contrary," the Fourth Circuit has held that inchoate crimes such as conspiracy are not controlled substance offenses under the Guidelines.

Mao's sentencing memorandum renewed these objections, adding that his use-of-a-firearm conviction was not a crime of violence because it did not require proof of a mens rea greater than recklessness. He argued for a Guidelines range of 57 months' imprisonment.

The government's sentencing memorandum responded that Mao qualified as a career offender, contending that Mao's use-of-a-firearm conviction was a crime of violence "[b]ecause [Va. Code Ann. § 18.2-53.1] has the use of force as an element and is also a categorical match to generic robbery." The government recommended a sentence of 151 months' imprisonment, followed by four years of supervised release.

At the sentencing hearing, the district court "agree[d] with probation and the government and the majority of the District Courts in Virginia that have considered this question that [use or display of a firearm while committing a robbery] does qualify as a crime of violence." The court reasoned that the elements of Va. Code Ann. § 18.2-53.1 require that the firearm "must be used or displayed in a threatening manner" and must "occur during the predicate offense," here robbery.

The district court also rejected Mao's claim that his conviction for conspiracy to distribute controlled substances did not qualify as a "controlled substance" offense. The court held that, notwithstanding Mao's arguments under Fourth Circuit law, "First Circuit precedence [sic] is fairly clear that . . . a conspiracy to distribute controlled substances is a controlled substance offense under the career offender guideline."

After finding that Mao qualified as a "career offender," the district court determined that "the guideline range without

the career offender enhancement is much too short, but . . . the career offender guideline is too long."  The court imposed a sentence of 121 months' imprisonment, followed by four years of supervised release.[1]

**II.**

Mao's use or display of a firearm while committing his Virginia robbery qualifies as a crime of violence under U.S.S.G. § 4B1.1.  "Whether a prior conviction qualifies as a predicate offense under U.S.S.G. § 4B1.1 is a question of law that we review de novo."  United States v. Almenas, 553 F.3d 27, 31 (1st Cir. 2009) (citing United States v. Santos, 363 F.3d 19, 22 (1st Cir. 2004)).

Va. Code Ann. § 18.2-53.1 makes it "unlawful for any person to use or attempt to use any . . . firearm or display such weapon in a threatening manner while committing or attempting to commit" twelve enumerated offenses, including robbery.  Because the statute "sets forth one or more elements of a particular offense in the alternative," it is divisible, and so we apply the "modified" categorical approach.  United States v. Fish, 758 F.3d 1, 6 (1st Cir. 2014) (citing Descamps v. United States, 570 U.S. 254, 257 (2013)).  "Under the modified categorical approach, we

---

[1]  The district court ordered four years of supervised release as to the conspiracy to distribute controlled substances count and three years of supervised release as to the conspiracy to commit money laundering count, to run concurrently.

may examine certain documents in the record of conviction, such as the indictment, plea agreement, and plea colloquy, in order to determine under which prong of the divisible statute the defendant was actually convicted, and then ask whether that particular crime categorically falls within the generic offense." Villanueva v. Holder, 784 F.3d 51, 54 (1st Cir. 2015).

Mao concedes that violations of § 18.2-53.1 are divisible by the enumerated predicate Virginia offense -- here, the use or threatening display of a firearm while committing or attempting the enumerated offense of robbery. This dooms his arguments.[2]

Mao's conviction qualifies as a crime of violence under the career offender enumerated offenses clause because it categorically matches the career offender enumerated offense of "robbery." See U.S.S.G. § 4B1.2(a)(2). Specifically, his conviction for use of a firearm during the commission of a robbery is not broader than "generic robbery," which "requires a type of

---

[2] For example, Mao argues that "[e]ven when compounded with Virginia's use-or-display-of-a-firearm statute, Va. Code Ann. § 18.2-53.1, no force need be directed at any person, let alone the victim," and that "[c]ompounding robbery with the use-of-a-firearm prohibition, Va. Code Ann. § 18.2-53.1, does not move the needle into career-offender territory." (emphases added). The documents in the record further establish that the applicable predicate offense here under § 18.2-53.1 is the commission of a robbery.

force that creates an immediate danger to the person."[3]  United States v. Rabb, 942 F.3d 1, 5 (1st Cir. 2019) (internal quotation marks omitted).  Because "the elements of the prior offense encompass no more conduct than do the elements of the 'generic' version of an offense that the guideline expressly enumerates," Mao's prior conviction qualified as a crime of violence.  United States v. Benítez-Beltrán, 892 F.3d 462, 466 (1st Cir. 2018) (citation omitted).

Mao's conviction also qualifies as a crime of violence under the force clause because it "has as an element the use, attempted use, or threatened use of physical force against the person of another."  U.S.S.G. § 4B1.2(a)(1).  Under Virginia law, "common-law robbery is defined as 'the taking, with intent to steal, of the personal property of another, from his person or in his presence, against his will, by violence or intimidation.'" United States v. Williams, 64 F.4th 149, 153 (4th Cir. 2023) (emphasis added) (quoting Durham v. Commonwealth, 198 S.E.2d 603, 605 (Va. 1973)).  Virginia law defines intimidation as "words or conduct of the accused" that "exercise such domination and control over the victim as to overcome the victim's mind and overbear the victim's will, placing the victim in fear of bodily harm."  United

---

[3]  The parties agree that because there is no definition of "robbery" in the 2021 Guidelines Manual, the Virginia conviction must be for a crime matching the elements of "generic" robbery. See Taylor v. United States, 495 U.S. 575, 595-96 (1990).

States v. Parham, 129 F.4th 280, 287-88 (4th Cir. 2025) (emphasis added) (quoting Jones v. Commonwealth, 496 S.E.2d 668, 670 (Va. Ct. App. 1998)). Because the use of a firearm under Va. Code Ann. § 18.2-53.1 must occur "while" committing the predicate offense, Mao's conviction requires using a firearm while overcoming the victim by violence or intimidation. This necessarily entails the use, attempted use, or threatened use of physical force and thus qualifies as a crime of violence under the Guidelines force clause.

Mao's arguments to the contrary are not persuasive. First, ignoring the Virginia statute's requirement of use of a firearm, Mao argues that Virginia's common-law robbery is not a crime of violence because "it can be committed based on a robber's threat to accuse a victim of sodomy," which is not a threat of physical force. He points to language in Parham, a factually different case, where the Fourth Circuit held that because there is "no immediate physical harm to a sodomy-threat victim . . . Virginia robbery can be committed by conduct broader than the generic form of robbery" and "is not a crime of violence under the enumerated offenses clause of the Guidelines." Id. at 288. However, the reasoning of Parham does not apply to Mao's charged offense of using a firearm in the commission of a robbery. Because § 18.2-53.1 requires that the defendant use a firearm -- a weapon clearly capable of causing physical harm or intimidating the victim -- it necessarily implicates the threat of immediate

- 10 -

violence that the Parham court found lacking in a threat to accuse the victim of sodomy. See United States v. Alexander, No. CV 3:25CR39 (RCY), 2025 WL 1969913, at *5 n.5 (E.D. Va. July 16, 2025) ("The Government rightly identifies that the possibility of a defendant committing a robbery with only the constructive force identified in Parham but otherwise using a firearm within the meaning of Va. Code Ann. § 18.2-53.1 is virtually nonexistent, and therefore insufficient to place [the defendant's] underlying offenses outside the [Armed Career Criminal Act's] definition of violent felonies . . . Thus, the rule of Parham plays a limited role in the instant analysis.").[4]

Mao argues that a defendant could "use" a firearm without threatening physical force. He poses a hypothetical in which a defendant, who carries but does not display a firearm, threatens to accuse the victim of sodomy; then steals a locked box belonging to the victim; then uses his firearm to break the lock, outside the view of the victim. We agree with the district court that Mao's hypothetical does not fit with § 18.2-53.1 because that

---

[4] We have noted that "the terms 'crime of violence' under the career offender guideline and 'violent felony' under the [Armed Career Criminal Act] are nearly identical in meaning, so that decisions construing one term inform the construction of the other." United States v. Willings, 588 F.3d 56, 58 n.2 (1st Cir. 2009) (citing United States v. Richards, 456 F.3d 260, 263 n. 2 (1st Cir. 2006)).

hypothetical defendant never used or displayed the firearm <u>during</u> <u>the robbery</u>, as required by the statute.[5]

Mao's concession that § 18.2-53.1 is divisible necessarily defeats his argument that the statute does not require "proof of an intent to use force." Common-law robbery is a specific-intent crime that requires "the taking, with intent to steal, of the personal property of another, from his person or in his presence, against his will, by violence or intimidation." <u>Durham</u>, 198 S.E.2d at 605 (quoting <u>Jones</u> v. <u>Commonwealth</u>, 1 S.E.2d 300, 301 (Va. 1939)). Mao's conviction under § 18.2-53.1, where the enumerated offense is robbery, "necessarily requires a <u>mens</u> <u>rea</u> of more than recklessness because without proof of more than accidental, negligent, or reckless conduct in using, attempting to use, or displaying a firearm, the Commonwealth could not prove a requisite element of common-law robbery." <u>Williams</u> v. <u>United</u> <u>States</u>, No. 1:04-CR-160 (LMB), 2023 WL 6849433, at \*5 (E.D. Va. Oct. 16, 2023) (internal quotation marks omitted).

---

[5] Mao also argues that Virginia common-law robbery does not require proof of force or threatened force against another because the defendant's threat may be to commit self-harm. Extrapolating from the facts in <u>Breeden</u> v. <u>Commonwealth</u>, 596 S.E.2d 563, 569 (Va. Ct. App. 2004), he argues that a defendant may "use or attempt to use" a firearm as a threat of force against himself, rather than against the victim. However, the defendant in <u>Breeden</u> "used a combination of threats and force to intimidate the complaining witness and overcome her will"; the case did not involve solely a threat of self-harm. <u>Id.</u> at 568. <u>Breeden</u> is also distinguishable because the predicate crime there was not robbery. <u>Id.</u>

Mao further concedes that, under First Circuit law, conspiracy to distribute controlled substances is a "controlled substance offense" for purposes of the Guidelines. He now asks this court to "break from its precedent" and join other circuits in finding that inchoate crimes are not "controlled substance offenses" under U.S.S.G. § 4B1.2. Reviewing this question of law de novo, Almenas, 553 F.3d at 31,[6] we decline.

This court has repeatedly held that the terms "controlled substance offense" and "crime of violence" in the pre-2023 Guidelines encompass inchoate crimes such as conspiracy, based on a reading of Application Note 1 to § 4B1.2.[7] See, e.g.,

---

[6] The government argues that plain error review applies because Mao argued to the district court that his drug trafficking conspiracy did not qualify as a "controlled substance offense" under Fourth Circuit law, but now argues that the First Circuit should overturn its precedent and hold the same. Regardless of whether Mao presents his position as a choice-of-law argument or as a request for the First Circuit to adopt the Fourth Circuit's reasoning, his briefing below was sufficient to identify his objection. See United States v. Hassan-Saleh-Mohamad, 930 F.3d 1, 6 (1st Cir. 2019) ("To preserve a claim of error for appellate review, an objection must be sufficiently specific to call the district court's attention to the asserted error." (quoting United States v. Soto-Soto, 855 F.3d 445, 448 n.1 (1st Cir. 2017))). The district court acknowledged Mao's objection in ruling on the issue: "I think First Circuit precedence [sic] is fairly clear that . . . a conspiracy to distribute controlled substances is a controlled substance offense under the career offender guideline, and your objection is preserved."

[7] The parties agree that the 2021 Guidelines -- those in effect at the time Mao committed the instant offense -- govern here.

United States v. Nieves-Díaz, 99 F.4th 1, 6 (1st Cir. 2024) ("We have repeatedly construed the term 'controlled substance offense' as it appears elsewhere in the Guidelines . . . to encompass conspiracy offenses."); United States v. Rodríguez-Rivera, 989 F.3d 183, 186 (1st Cir. 2021) ("Application Note 1 to [§ 4B1.2] adds that a 'controlled substance offense' 'include[s] the offenses of aiding and abetting, conspiring, and attempting to commit such offenses.' . . . And our controlling circuit precedent deems that interpretation to be authoritative." (first alteration in original) (citation omitted)).

Under the law-of-the-circuit doctrine, "newly constituted panels in a multi-panel circuit court are bound by prior panel decisions that are closely on point." United States v. Wurie, 867 F.3d 28, 34 (1st Cir. 2017) (quoting San Juan Cable LLC v. P.R. Tel. Co., 612 F.3d 25, 33 (1st Cir. 2010)). The exceptions to this rule "are extremely narrow and their incidence is hen's-teeth-rare." Id. (quoting San Juan Cable LLC, 612 F.3d at 33). These exceptions occur (1) "when the holding of the prior panel is 'contradicted by controlling authority, subsequently announced'"; or (2) "when 'authority that postdates the original decision, although not directly controlling, nevertheless offers a sound reason for believing that the former panel, in light of fresh developments, would change its collective mind.'" Lassend

v. United States, 898 F.3d 115, 124 n.6 (1st Cir. 2018) (quoting Wurie, 867 F.3d at 34).

Mao focuses on the latter exception. He principally takes issue with the reasoning of the First Circuit's precedent, noting that subsequent circuit courts have disagreed. These circuit courts have reasoned that Application Note 1 is "inconsistent" with the text of § 4B1.2(b), which does not specifically encompass conspiracy. See, e.g., United States v. Campbell, 22 F.4th 438, 444 (4th Cir. 2022). Mao's argument fails because "it is not our role to overturn binding circuit precedent for the purpose of resolving what the defendant perceives as a circuit split." United States v. Gerrish, 96 F.4th 67, 71 (1st Cir.), cert. denied 145 S. Ct. (2024). While other courts have adopted a contrary view, at least five circuits, including the First, "have continued to hold that inchoate crimes like attempt and conspiracy qualify as controlled substance offenses under U.S.S.G. § 4B1.2(b)." Campbell, 22 F.4th at 443.[8]

---

[8] When Campbell was decided, the First, Second, Seventh, Eighth, and Eleventh Circuits had held that inchoate crimes qualify as controlled substance offenses under § 4B1.2(b). Campbell, 22 F.4th at 443. Since then, the Fifth and Tenth Circuits have held the same. See United States v. Vargas, 74 F.4th 673, 683-99 (5th Cir. 2023) (en banc); United States v. Maloid, 71 F.4th 795, 805-14 (10th Cir. 2023). The Eleventh Circuit, however, has reversed course to hold that that the "definition of 'controlled substance offense' in § 4B1.2(b) of the Sentencing Guidelines does not include inchoate offenses like conspiracy and attempt." United States v. Dupree, 57 F.4th 1269, 1280 (11th Cir. 2023) (en banc).

Mao also points to three recent Supreme Court cases -- Loper Bright Enterprises v. Raimondo, 603 U.S. 369 (2024); United States v. Davis, 588 U.S. 445 (2019); and Kisor v. Wilkie, 588 U.S. 558 (2019) -- which he contends provide "sound reason" to deviate from the law of the circuit. In his view, Loper Bright and Kisor establish "the [Supreme] Court's walk-back of judicial deference to agency interpretations," and Davis "underscores the [separation of powers and due process] principle that it must be clear that Congress itself has approved proscriptive laws." However, we have explicitly rejected the argument that Kisor requires us to overturn our prior "controlled substance" holdings. See United States v. Lewis, 963 F.3d 16, 23-24 (1st Cir. 2020). Further, Mao concedes that Loper Bright "applie[d] to judicial deference to an agency's interpretations of statutes . . . whereas the Court characterizes Commentary as more 'akin to an agency's interpretation of its own legislative rules.'" Appellant's Br. 47 (quoting Stinson v. United States, 508 U.S. 36, 45 (1993)). We have also rejected the argument "that Application Note 1 violates the rule of lenity, due process, and the separation of powers," finding such an argument "foreclosed by our circuit precedent." Lewis, 963 F.3d at 21 n.8 (1st Cir. 2020) (citing United States v. Piper, 35 F.3d 611, 619-20 (1st Cir. 1994)). Mao's arguments are insufficient to overcome the law-of-the-circuit doctrine.

Even if we were to revisit our precedent, we see no reason to depart from our prior holdings that Application Note 1 is not inconsistent with § 4B1.2.

Mao argues on appeal that Application Note 1 is inconsistent with the text of § 4B1.2(b). Section 4B1.2(b) defines a "controlled substance offense" as an offense under federal or state law, punishable by more than one year of imprisonment, that "prohibits the manufacture, import, export, distribution, or dispensing of a controlled substance (or a counterfeit substance)." The text is silent as to whether inchoate crimes -- such as conspiracy to distribute a controlled substance -- fall within this provision. Mao argues that this silence must mean that Application Note 1, which expressly includes inchoate offenses, is inconsistent with § 4B1.2(b).

We agree with the Fifth Circuit's holding in United States v. Vargas, 74 F.4th 673 (5th Cir. 2023) (en banc), that attempt and other inchoate crimes are fundamentally different from the discrete completed acts listed in the text of § 4B1.2(b).[9] See

---

[9] Some circuits have concluded that the omission of inchoate offenses from § 4B1.2(b) was intentional, pointing to the fact that § 4B1.2(a)(1) expressly includes the "attempted use" of force in defining "crime of violence." See United States v. Castillo, 69 F.4th 648, 658 (9th Cir. 2023) (The "distinction between definitions in neighboring subsections within the same provision shows that the drafters knew how to include inchoate offenses in defining 'controlled substance offense' for sentencing enhancement purposes, but chose not to do so."). But the two subsections are structured differently. Section 4B1.2(a) expressly includes

- 17 -

id. at 691-92. Because inchoate crimes are a separate conceptual category from the listed completed crimes in the Guidelines' text, we cannot say that their exclusion makes Application Note 1 inconsistent with the provision. "[T]he canon expressio unius est exclusio alterius does not apply to every statutory listing or grouping; it has force only when the items expressed are members of an 'associated group or series,' justifying the inference that items not mentioned were excluded by deliberate choice, not inadvertence." Barnhart v. Peabody Coal Co., 537 U.S. 149, 168 (2003) (quoting United States v. Vonn, 535 U.S. 55, 65 (2002)); see also Piper, 35 F.3d at 617 ("Because [Application Note 1] neither excludes any offenses expressly enumerated in the guideline, nor calls for the inclusion of any offenses that the guideline expressly excludes, there is no inconsistency.").

Although Mao only brings a textual argument, we further agree with the Fifth Circuit that the structure, history, and purpose of the Guidelines support our precedent finding that Application Note 1 is not inconsistent with § 4B1.2. See Vargas, 74 F.4th at 698. In other words, while we do not agree that Kisor

---

crimes that have "as an element the use, attempted use, or threatened use of physical force." U.S.S.G. § 4B1.2(a)(1) (emphasis added). By contrast, § 4B1.2(b) defines "controlled substance offense" by listing categories of prohibited conduct. The structural differences between the two subsections weaken the inference that the omission of inchoate crimes from subsection (b) reflects a deliberate exclusion.

applies here, the Kisor framework nevertheless supports our existing interpretation.

As to structure, other provisions in the Guidelines specifically exclude certain crimes. See, e.g., § 3D1.1(b)(2); § 4A1.2(c). By contrast, the authors chose not to exclude inchoate crimes from § 4B1.2(b). As to history, earlier versions of the Guidelines included the phrase "similar offenses" in the enumerated list of controlled substance offenses. See Vargas, 74 F.4th at 694-95. The Commission repeatedly clarified that "similar offenses" included inchoate crimes. Id. In 1989, the Guidelines were amended to include the current "prohibits" language, which is reasonably read to be consistent with the Guidelines' historical interpretation.[10] And as to purpose, the Guidelines generally seek to hold defendants who have a relevant criminal history of repeated similar offenses more culpable, which would logically include attempts or conspiracies to commit such offenses. See id. at 695-96; see also Piper, 35 F.3d at 617 (reasoning that the inclusion of inchoate offenses in Application Note 1 is consistent with § 4B1.2 because it represents a "logical step both from a lay

---

[10] Other circuits have reasoned that the use of the word "prohibits" in § 4B1.2 itself supports the conclusion that Application Note 1 is not inconsistent with the Guidelines. See, e.g., United States v. Richardson, 958 F.3d 151, 154-55 (2d Cir. 2020). Because to "prohibit" can mean to "prevent" or "hinder," the Application Note -- which would ban a conspiracy to sell a controlled substance -- would "hinder" the distribution of the substance. Id. at 155.

person's coign of vantage and from the standpoint of the Commission's (and Congress's) oft-demonstrated preoccupation with punishing drug traffickers sternly.").

Given these independent reasons for affirming our precedent on Application Note 1, we decline Mao's invitation to further entrench the circuit split on this issue.

Mao's sentence is **affirmed**.